BROWN, J.
I respectfully dissent.
Under the provisions of Proposition 218, affected property owners must approve the imposition of any new or increased fee, which is “any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service.” (Cal. Const., art. XIII D, § 2, subd. (e) (article XIII D).) The dispositive determination in this case is whether a rental inspection fee is imposed “upon a person as an incident of property ownership.” {Ibid.) To find that it is not, the majority concludes the Court of Appeal erroneously substituted “on” for “as." It is the majority that errs, however, in assuming “incident” denotes “the so-called bundle of rights that flow from [estates in land].” (Maj. opn., ante, at p. 840; see maj. opn., ante, at pp. 840-841.) In my view, the voters did not intend the courts to look any further than a standard dictionary in applying the terms of article XIH D.
“A constitutional amendment should be construed in accordance with the natural and ordinary meaning of its words. [Citation.]” (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 302 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) Nothing in the ballot arguments in favor of or against Proposition 218 or in the Legislative Analyst’s analysis implies that a different rule should obtain with respect to “incident,” or that the voters intended it to have other than a plain meaning. The dictionary defines an “incident” as “something incident to something else," that is, “dependent upon or involved in something else.” (Webster’s New World Dict. (3d college ed. 1988) p. 682; see also Black’s Law Diet. (4th ed. 1968) p. 904, col. 2 [“Used as a noun, [incident] denotes anything which inseparably belongs to, or is connected with, or inherent in, another thing .... Also, less strictly, it denotes anything which is usually *846 connected with another, or connected for some purposes, though not inseparably”].) In other words, if the imposition of a fee depends upon one’s ownership of property, it comes within the purview of article XIII D unless otherwise excepted.
The fee at issue here plainly meets this definition. Pursuant to its police powers, the City of Los Angeles (City) enacted a Housing Code (L.A. Mun. Code, § 161.101 et seq.), which provides that residential rental properties are subject to regular inspection for substandard and unsanitary conditions. Under the Housing Code, funding for these inspections devolves to a particular class of property owners, the landlords of the rental units, who must pay a $12 fee for every unit owned. (Id,, § 161.352.)[1] As the majority acknowledges, “no one can rent [apartments] without owning them.” (Maj. opn., ante, at p. 841; see also Nash v. City of Santa Monica (1984) 37 Cal.3d 97, 105 [207 Cal.Rptr. 285, 688 P.2d 894].) And no one is subject to the rental inspection fee without owning them. This exaction is thus imposed “as an incident of property ownership” (art. XIII D, § 2, subd. (e)); that is, it is dependent upon such ownership. (Cf. Off. of Legis. Analyst, Understanding Proposition 218 (Dec. 1996) p. 30 [“Generally, we think these fees would be considered property-related if there were no practical way that the owner could avoid the fee, short of selling the property or fundamentally changing its use”].) Moreover, “[s]hould the owner fail to pay the required fee, the City of Los Angeles will recover it, plus accrued interest, utilizing any remedies provided by law including nuisance abatement or municipal tax lien procedures established by ordinance or state law.” (L.A. Mun. Code, § 161.352.) The use of tax lien procedures is a typical enforcement mechanism for delinquent levies imposed against property.
The majority avoids this result in part by finding the City “imposes a fee on its subjects by virtue of their ownership of a business—i.e., because they are landlords.” (Maj. opn., ante, at p. 842.) The last portion of this statement proves too much: Landlords are property owners. Imposition of the fee is an incident of, i.e., depends upon, that status and thereby runs afoul of article XIIID. As for the first portion of the statement, it ignores or disregards what the majority elsewhere concedes, that the business at issue is inseparable from property ownership. No amount of parsing can change that ineluctable fact.
*847 The majority also concludes “neither the ballot arguments nor the Legislative Analyst’s analysis suggested that article XIII D was intended to encompass fees of the type at issue here.” (Maj. opn., ante, at p. 843.) Ultimately, the terms of the measure as enacted control our interpretation (see Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.)); and their plain meaning does not support the majority’s reasoning. But the ballot materials also belie the majority’s conclusion. While those materials do not specifically mention rental inspection fees, such an intention is readily discemable from any fair reading. The Legislative Analyst warned generally that “[t]his measure would constrain local governments’ ability to impose fees” and “[rjeduce the amount of fees . . . businesses pay.” (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by the Legis. Analyst, p. 73 (Ballot Pamphlet).) More particularly, the Legislative Analyst’s list of “most likely fees and assessments affected by these provisions” (id. at p. 74) easily encompasses this type of exaction: “park and recreation programs, fire protection, lighting, ambulance, business improvement programs, library, and water service.” (Ibid.) The argument in favor of Proposition 218 reminded the electorate that “[a]fter voters passed Proposition 13, politicians created a loophole in the law that allows them to raise taxes without voter approval by calling taxes ‘assessments’ and ‘fees.’ ” (Ballot Pamp., supra, argument in favor of Prop. 218, p. 76.) “Proposition 218 guarantees your right to vote on local tax increases—even when they are called something else, like ‘assessments’ or ‘fees’ . . . .” (Ibid.) The argument did not limit the type of “fee” that would be subject to a vote under article XIII D but instead promised, “Proposition 218 . . . stops politicians’ end-runs around Proposition 13.” (Ballot Pamp., supra, rebuttal to argument against Prop. 218, p. 77.) Particularly in light of its timing, the City’s rental inspection fee appears to be just the kind of evasive maneuver at which proponents aimed Proposition 218. (See generally Huntington Park Redevelopment Agency v. Martin (1985) 38 Cal.3d 100, 105 [211 Cal.Rptr. 133, 695 P.2d 220] [purpose, in part, of Prop. 13 was “to prevent the government from recouping its losses from decreased property taxes by imposing or increasing other taxes”].)
In this regard, the majority also fails to accord any significance to two important provisions of Proposition 218. In any action challenging imposition of a new or increased fee or charge, the initiative assigns to the agency “the burden ... to demonstrate compliance with this article” (art. XIII D, § 6, subd. (b)(5)), thereby reversing the usual deference accorded governmental action in such matters and making it more difficult to defend its legitimacy. (See Ballot Pamp., supra, analysis of Prop. 218 by the Legis. *848 Analyst, p. 74; see also art. XIIID, § 4, subd. (f) [imposing same burden for assessments].) The voters also expressly provided that Proposition 218 “shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.” (Ballot Pamp., supra, text of Prop. 218, § 5, p. 109, also reprinted as Historical Notes, 2A West’s Ann. Cal. Const. (2000 supp.) foil. art. XIII C, § 1, p. 25.) The majority’s construction frustrates both these goals.
The City argues that conditioning imposition of its rental inspection fee on compliance with the procedures set forth in article XIII D would allow landlords to defeat regulation of their businesses. This argument misses two critical points: First and generally, since the City has decided its rental inspections are necessary to eradicate “substandard and unsanitary residential buildings and dwelling units the physical conditions and characteristics of which ... are such as to be detrimental to or jeopardize the health, safety and welfare of their occupants and of the public” (L.A. Mun. Code, § 161.102), it can reasonably expect the public to pay for the program.
Second and specifically, the Los Angeles Municipal Code already provides substantial enforcement authority to prosecute landlords who violate the City’s Housing Code. If a property owner fails to correct violations, the City may recover its administrative as well as abatement costs (L.A. Mun. Code, § 161.206.2), may seek criminal penalties including fines and imprisonment (id., § 161.206.3), and may pursue civil remedies as provided in the Health and Safety Code (L.A. Mun. Code, § 161.206.4).
When the voters passed Proposition 13 in 1978, they sought to restrict the ability of government to impose taxes and other charges on property owners without their approval. For almost two decades, however, they witnessed politicians evade this constitutional limitation. The message of Proposition 218 is that they meant what they said. With the majority turning a deaf ear to that message, we may well expect a future effort to “stop[] politicians’ end-runs around Proposition 13.” (Ballot Pamp., supra, rebuttal to argument against Prop. 218, p. 77.)
Baxter, J., concurred.

Los Angeles Municipal Code section 161.352 provides: “Owners of all buildings subject to inspection shall pay a service fee of $12.00 per unit per year. The fee will be used to finance the cost of inspection and enforcement by the Housing Department. Should the owner fail to pay the required fee, the City of Los Angeles will recover it, plus accrued interest, utilizing any remedies provided by law including nuisance abatement or municipal tax lien procedures established by ordinance or state law. This fee shall be known as the ‘Systematic Code Enforcement Program Fee.’ ” (Italics added.)